IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

COFFEE.ORG, INC.                                                                                           PLAINTIFF

v.                                      Case No. 2:11-CV-02031

GREEN MOUNTAIN COFFEE ROASTERS, INC.;
KEURIG, INC.; VAN HOUTTE USA ONLINE, INC.;
VAN HOUTTE USA HOLDINGS, INC.; and
VISTAR CORPORATION                                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants Green Mountain Coffee Roasters, Inc. ("GMCR"), Keurig Inc., Van Houtte USA Online, Inc., and Van Houtte USA Holdings, Inc.'s Motion to Dismiss or for Judgment on the Pleadings (Doc. 44) and Brief in Support (Doc. 45); Plaintiff Coffee.org, Inc.'s ("Coffee.org") Response (Doc. 51); and Defendants' Reply (Doc. 52). Also pending are Defendants' Motion to Stay Discovery and Continue Trial Date (Doc. 53) and Brief in Support (Doc. 54). After due consideration of Defendants' Motion to Dismiss or for Judgment on the Pleadings (Doc. 44), the Court finds that the Motion should be **GRANTED**. In light of the Court's decision to dismiss this case, Defendants' Motion to Stay Discovery and Continue Trial Date (Doc. 53) is **DENIED AS MOOT**.

### I. Background

Plaintiff Coffee.org is an Arkansas corporation with its principal place of business in Fort Smith, Arkansas. Coffee.org operates an e-commerce website selling coffee and coffee-related products online. One of the most popular coffee products sold by Coffee.org was the "K-cup," a single-serve coffee capsule that is instrumental in brewing one cup of coffee at a time through the

-1-

use of a patented machine sold by GMCR and Keurig, Incorporated ("Keurig"). K-cups are purchased by millions of consumers in the United States. According to the Amended Complaint, Coffee.org has sold over 8,400,000 units of K-cups through its online business.

The other Defendants to this action are Van Houtte USA Online, Inc., and Van Houtte USA Holdings, Inc., which are wholly-owned subsidiaries of Defendant GMCR, and Vistar Corporation, which is a distributor of GMCR.[1]

Since early 2008, Coffee.org purchased K-cups for resale on its website from a number of suppliers, including Defendant GMCR, Timothy's Coffees of the World, Inc., Diedrich Coffee, Inc., and Wolfgang Puck, packaged by Van Houtte (LJVH Holdings, Inc.). Coffee.org alleges that Defendant GMCR has acquired essentially all distributors of K-cups in violation of state and federal antitrust laws. Specifically, Coffee.org asserts that in 2006, GMCR acquired Keurig, Inc., the company that patented the K-cup and the coffee brewing system that uses the K-cup. Then, in 2009, GMCR acquired Timothy's Coffees of the World, Inc., which distributes its coffee in K-cups. In May of 2010, GMCR acquired Diedrich Coffee, Inc., which is also a K-cup supplier; and by September 2010, GMCR had acquired all shares of LJVH Holdings, Inc., which included the Van Houtte, Bigelow, and Wolfgang Puck licensed brands of K-cup coffees.

By letter dated January 20, 2011, which is attached to the Amended Complaint, GMCR unilaterally terminated its business relationship with Coffee.org, thereby ending Coffee.org's existing

---

[1] Plaintiff stated in its Reply Brief: "Plaintiff no longer desires to pursue claims against Vistar Corporation and accordingly believes that its claims under Section 1 may be subject to dismissal." (Doc. 51, p. 7). However, Plaintiff has not formally dismissed Defendant Vistar Corporation from this action, nor has Vistar Corporation moved separately to dismiss Plaintiff's claims against it. Accordingly, for purposes of deciding Defendants' Motion to Dismiss or for Judgment on the Pleadings, Vistar Corporation shall be considered a Defendant in this lawsuit.

supply source for K-cups. (Doc. 43-1). Coffee.org contends that GMCR has sought to create and perpetuate a monopoly in the market of the sale of K-cups, particularly in the e-commerce channel of distribution, in violation of the Arkansas Unfair Practices Act, Ark. Code Ann. § 4-75-201, *et seq.*, and the Sherman Act, 15 U.S.C.A. §§ 1-2. Coffee.org maintains that GMCR has sold or offered to sell its Keurig coffee brewers at less than cost with the intent to injure Coffee.org, and GMCR's termination of the business relationship between it and Coffee.org will eventually put Coffee.org out of business. Additionally, Coffee.org asserts that GMCR has combined with Keurig, Timothy's, Diedrich, Van Houtte, and various other companies for the purpose of forming a monopoly on the internet supply of K-cups, drive out all competitors, and fix prices of K-cups in violation of Ark. Code Ann. § 4-75-301, *et seq.*, and the Sherman Act. In its plea for relief, Coffee.org asks that the Court issue an injunction precluding the termination of the business relationship between Coffee.org and GMCR and ordering GMCR to remunerate Coffee.org pursuant to a quantum meruit theory of recovery for the value of Coffee.org's advertising and promotion of K-cups, Coffee.org's substantial customer base, and the goodwill conferred upon GMCR by Coffee.org.

An *ex parte* temporary restraining order in this case was entered by the state court on February 3, 2011. GMCR removed the case to federal court on February 14, 2011. The restraining order expired on February 28, 2011. GMCR then moved to dismiss the case for failure to state a claim on March 1, 2011, asserting that Plaintiff failed to allege any sales below cost within Arkansas, as required under the Arkansas Unfair Practices Act, failed to allege any relevant product market, and lacked both antitrust injury and antitrust standing. Further, GMCR maintained that there is no private right to a cause of action under the Arkansas monopoly statutes, found at Ark. Code Ann.

§ 4-75-301, *et seq.* The Court granted leave for Plaintiff to amend its Complaint on November 15, 2011, which resulted in the addition of several Defendants and federal claims for antitrust violations, conspiracy, monopolization, and illegal restraint of trade pursuant to the Sherman and Clayton Acts. The Court then denied GMCR's Motion to Dismiss (Doc. 6) as moot after allowing Plaintiff to file its Amended Complaint asserting new causes of action. On November 18, 2011, the Court denied Plaintiff's request for a preliminary injunction, finding that Coffee.org did not have a probability of success on the merits on any of its claims. (Doc. 41).

## II. Standard of Review

Defendants now ask the Court to enter judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). As a general rule, a motion for judgment on the pleadings is reviewed under the same standard as a Fed. R. Civ. P. 12 (b)(6) motion to dismiss for failure to state a claim. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1223 (8th Cir. 2010). Under this standard, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999) ("A motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'") In applying this standard, the Court must presume all factual allegations in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Whitmore v. Harrington*, 204 F.3d 784, 784 (8th Cir. 2000).

"Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 497-98 (8th Cir. 2010)(citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)).

In ruling on a motion for judgment on the pleadings, the Court may not consider matters outside the pleadings; however, it is acceptable for the Court to consider exhibits attached to a complaint, materials that are necessarily embraced by a complaint, and materials that are part of the public record. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1006 (2d ed. 1990)(court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). The Eighth Circuit has held that in considering a motion for judgment on the pleadings, a district court may properly rely on a transcript of proceedings before another court on an earlier, related action involving the same parties. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Accordingly, in deciding the instant Motion, the Court will refer to and rely on the pleadings and orders filed in this case, as well as a transcript of a hearing that took place on April 14, 2011, before the Honorable Magistrate Judge James R. Marschewski, regarding Defendants' Motion to Dissolve a Temporary Restraining Order (Doc. 31).[2]

**III. Discussion**

      A.     Arkansas Unfair Practices Act Violations, Ark. Code Ann. 4-75-201, *et seq.*

The Arkansas Unfair Practices Act's purpose is "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." Ark. Code Ann. § 4-75-204. Pursuant to this statute, "[a]ny person, firm, private corporation, or municipal or other public corporation . . . may maintain an action to enjoin a continuance of any act or acts in

---

[2] Plaintiff and Defendant GMCR were represented by counsel at this hearing, and both parties had the opportunity to present witnesses, introduce evidence, engage in oral argument, and fully brief the issues prior to the hearing.

violation of this subchapter and, if injured thereby, for the recovery of damages." Ark. Code Ann. § 4-75-211(a).

Plaintiff claims that GMCR engaged in business in Arkansas to sell, offer for sale, or advertise for sale Keurig brand coffee brewers, which utilize K-cups, at less than cost to the vendor for the purpose of injuring competitors and destroying competition in violation of Ark. Code. Ann. § 4-75-209(a)(1). Even if the Court accepted as true Plaintiff's contention that GMCR sold Keurig coffee brewers at below cost in order to increase demand for its K-cups, such behavior would not constitute a violation of the Arkansas Unfair Practices Act. Selling below a competitor's price is markedly different from engaging in a sustained effort to destroy competition in a product area by selling below cost over a prolonged period of time. It is not illegal to sell items below cost as "loss leaders" to entice consumers to purchase products. *Wal-Mart Stores, Inc. v. American Drugs, Inc.*, 319 Ark. 214, 221 (Ark. 1995). Moreover, the Arkansas Supreme Court interpreting the Arkansas Unfair Practices Act has announced:

> "[o]ur statute plainly does not contemplate a *prima facie* case of predation based on loss-leader sales, and we are not willing to invalidate, and indeed render illegal, the technique of using loss-leader products or services without a clear directive from the General Assembly."

*Id.*

Plaintiff asserts that GMCR obtained a controlling interest in co-Defendant Keurig in June of 2006, and afterward "included the sale of its AH (at home) brewers approximately at cost or sometimes at a loss when factoring in the incremental costs related to sales . . ." (Doc. 43, ¶ 51). However, at the hearing held before the Magistrate on April 14, 2011, Jim Travis, Vice President of Sales for GMCR, testified that he was unaware of any sales of Keurig brewers below cost (Doc.

31, p. 108-09). Even if such sales occurred, William McClure, the CEO of Plaintiff Coffee.org, testified that the sale of coffee brewers constituted only 4% of his company's sales since the inception of the company, though the sale of K-cups constituted 84% of Coffee.org's business. *Id.* at p. 38. Accepting the 4% figure as true, as the Court is required to do in evaluating a motion for judgment on the pleadings, the extent of Plaintiff's injury from alleged below-cost sales of Keurig coffee brewers is negligible at best, if such injury occurred at all; and the likelihood of competition being affected, let alone destroyed, by any alleged below-cost sales is similarly negligible. Moreover, Mr. McClure testified at the April 14 hearing that he did not know how Coffee.org, as a purveyor of K-cups, could be injured by a sale or giveaway of any Keurig machine, since Coffee.org benefitted when additional Keurig brewers appeared on customers' countertops. *Id.* at p. 83. Considering the allegations in the Amended Complaint and its attachments, as well as the contents of the April 14, 2011, hearing transcript, the Court accordingly finds that Plaintiff fails to state a claim under the Arkansas Unfair Practices Act.

   B.  <u>Arkansas Monopoly Statute Violations, Ark. Code Ann. §4-75-301,</u> *et seq.*

There is no private right to a cause of action pursuant to the subchapter of the Arkansas Code relating to unfair monopolies. The Eighth Circuit has affirmed this point of law. *See Baxley-Delamar Monuments, Inc. v. Am. Cemetery Association*, 843 F.2d 1154, 1158 (8th Cir. 1988). Instead, the monopoly statutes are to be enforced by and through the Attorney General for the State of Arkansas, and private individuals or corporations lack the authority to assert violations of the monopoly statutes. Ark. Code Ann. § 4-75-308 ("All actions authorized and brought under this subchapter shall have precedence on motion of the Attorney General . . .") and § 4-75-315(b) ("The Attorney General also may bring a civil action in the name of the state, as parens patriae on behalf

of natural persons residing in this state . . .").  Plaintiff therefore fails to state a claim under this statute.[3]

      C.    <u>Quantum Meruit</u>

Turning to Plaintiff's claim for quantum meruit or unjust enrichment, in order to prevail, Plaintiff must show that GMCR received something of value to which it was not entitled and which it must restore.  *See Guaranty National Ins. v. Denver Roller, Inc.*, 313 Ark. 128 (Ark. 1993). Recovery via the equitable remedy of quantum meruit is based on quasi-contract, or contract implied in law.  *Dews v. Halliburton Industries, Inc.*, 288 Ark. 532, 536 (Ark. 1986).  No legal contract exists between the parties in a quasi-contract situation; rather, the basis for recovery is that a party has benefitted from services undertaken by another party, whether those services were requested or not.  *Id.* at 537.

In the case at bar, GMCR and Coffee.org had an at-will business relationship, wherein GMCR or its wholly-owned subsidiaries sold K-cups to Coffee.org.  At no time did Coffee.org enter into a licensing agreement to sell GMCR's patented K-cup product, nor did GMCR have a legal, contractual obligation to provide K-cups for re-sale to Coffee.org.  Nevertheless, Coffee.org contends that it has expended significant funds on advertising, sales, and marketing of K-cups and on development of good will with its customer base.  Coffee.org further argues that unless GMCR is prohibited from terminating its business relationship with Coffee.org, GMCR will be unjustly enriched by virtue of receiving Coffee.org's base of customers who purchase K-cups.

Plaintiff's quantum meruit argument is flawed in that Plaintiff's customers who purchase K-

---

    [3] Further, the claim is invalid on the merits pursuant to the Court's reasoning in Section "E" below, since Plaintiff lacks monopoly power and is not a monopolist.

cups are also GMCR's customers.  This is because the K-cup is a licensed product owned by GMCR, and therefore, GMCR receives some benefit from <u>all</u> K-cup sales to online customers.  This is true whether Plaintiff or any number of online retailers make the sales.  Coffee.org merely purchases K-cups for resale; the product itself is Defendant GMCR's and any sales of such product are realized in whole or in part by Defendant.  Because Coffee.org's customers are, by definition, also GMCR's customers, Plaintiff cannot state a claim for quantum meruit.

A second, independent reason why Plaintiff's quantum meruit argument must fail is that there is substantial evidence that Plaintiff's online marketing strategy of actively denigrating the K-cup brand potentially resulted in a loss of goodwill to GMCR and a loss in profits.  *See* Doc. 31, pp. 74-77 and 79.  Plaintiff has marketed the K-cup on its website as a product that is both detrimental to the environment and too costly compared to other coffee products in a side-by-side comparison.  Although Plaintiff did offer GMCR's product for sale on its website and in fact sold many units of product prior to 2011, Plaintiff has failed to state a claim that GMCR has been unjustly enriched despite Coffee.org's marketing methods and negative advertising.

       D.      <u>Conspiracy and Restraint of Trade, Sherman Act § 1 and Clayton Act § 15</u>[4]

Plaintiff alleges that Defendants have entered into a conspiracy to restrain trade in violation of Section 1 of the Sherman Act.  The Sherman Act provides that every "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C.A. § 1.

Initially, the Court observes that simply because Plaintiff alleges an unlawful restraint of

---

[4] The Clayton Act, 15 U.S.C.A. § 15, states that any person who is injured in his person or property through a violation of the antitrust laws is entitled to damages.

trade in its Complaint does not mean that the Court is bound to accept this legal conclusion as true, even on a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

The alleged restraint of trade at issue here is the refusal of a wholesaler or supplier (GMCR) to sell its product (K-cups) to a retailer (Coffee.org). The Supreme Court found in *Eastman Kodak Co. v. Image Technical Service, Inc.*, 112 S.Ct. 2072, 2090 (1992), that "in some instances one brand of a product can constitute a specific market." However, "[t]he proper market definition . . . can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Id.* Defendant GMCR has an online service for customers to purchase K-cups, but there are also many online retailers of K-cups besides GMCR and Plaintiff. In addition, GMCR has established contractual relationships with online retailers of its licensed K-cup products, but it also has an at-will relationship with a host of other online suppliers of K-cups, including Bed Bath & Beyond, Target, Wal-Mart, and Kohl's. Consumers can also make online purchases of K-cups at Amazon.com. In light of the economic realities faced by consumers of K-cups in the case at bar, the Court cannot find that Defendant is placing an unlawful restraint on trade on K-cups.

Furthermore, the Court does not consider the relevant market in this case to be the single, licensed K-cup product. It is well-established that when a court engages in analysis of a party's alleged anti-competitive behavior, the relevant product market must first be defined to include all products that are reasonably interchangeable. *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962); *United States v. E.I. du Pont d Nemours & Co.*, 351 U.S. 377 (1956). A single trademarked product, such as GMCR's patented and trademarked K-cups, is not likely to constitute a specific

market. *E.I. du Pont*, 351 U.S. at 393. Instead, the relevant product market must include all products that are reasonably interchangeable with the K-cup brewers and coffee packs, such as single-cup or "pod" brewers, single-cup or "pod" coffee packs, T-disc brewers and coffee packs, and reusable single-cup coffee containers. The product market must also include all current and potential methods of distribution of the product. *See Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215, 1234 (8th Cir. 1987). The Court finds, therefore, that the relevant product market, as defined by Coffee.org, is too narrow and must be rejected.

According to its Amended Complaint, Coffee.org maintains that co-Defendants GMCR, Keurig, Van Houtte USA Online, Inc., and Van Houtte USA Holdings, Inc., conspired to refuse to deal with Plaintiff and fix the price of K-cups in a manner contrary to law. The relevant fact regarding the non-GMCR Defendants is that all of them are either wholly-owned subsidiaries or assets/brands owned by GMCR. (Doc. 43 at ¶¶ 3, 4, 15, 93, and 109). As such, any agreements between GMCR and the other Defendants cannot violate Section 1 of the Sherman Act, since joint activities of a parent company and its wholly-owned subsidiaries cannot constitute a contract, combination, or conspiracy that violates federal antitrust law. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984)("If a parent and a wholly owned subsidiary do 'agree' to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is no justification for § 1 scrutiny"). Therefore, Plaintiff does not state a claim for conspiracy between GMCR and its subsidiaries.

Plaintiff has also alleged that Defendant Vistar Corporation, a distributor for GMCR and a company from which Plaintiff purchased K-cups in the past, has acted in concert with GMCR to refuse to deal with Coffee.org and has "conspired and agreed to restrict and limit the distribution and

sale of K-cups to Coffee.org." (Doc. 43, ¶ 61). Such a practice, if true, would not constitute a *per se* violation. Vertical non-price restrictions, such as are alleged between supplier GMCR and distributor Vistar, are governed by the "rule of reason" analysis because such restrictions "promote interbrand competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products." *Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 559 (8th Cir. 1998), citing *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54 (1977).

The rule of reason analysis requires an inquiry into GMCR's market power and effect on competition. *Double D,* 136 F.3d at 558. In the instant case, Plaintiff has defined the relevant product market as internet sales of K-cups in the United States. (Doc. 43, ¶ 77). As discussed above, because this definition of the relevant product market is far too narrow, it is rejected. The correct definition of the relevant product market must be broadened to include all single-serve coffee products available for sale through the internet. In the case at bar, consumers have numerous retailers available throughout the United States from which to purchase single-serve coffee products, including K-cup coffee and coffee brewers. Even Coffee.org's company representative testified that he was able to secure K-cups from sources other than GMCR, including Kohl's or Midwest Supply. (Doc. 31, pp. 70-71.)

To prove a violation of the Sherman Act, it must be shown that only a small percentage of purchasers have alternative suppliers to whom they could practicably turn in the event that a defendant supplier's anti-competitive actions result in a price increase. *Morganstern v. Wilson*, 29 F.3d 1291, 1296 (8th Cir. 1994); *Ryko*, 823 F.2d at 1234 (Sherman Act §1 claim based on exclusive dealing agreement depends on availability of alternative methods of distribution). The Court finds that so many alternate suppliers of the K-cup exist that e-commerce consumers would not be

adversely affected if they could not purchase K-cups through Plaintiff. Accordingly, after considering the relevant product and geographic markets and the alleged restraint on trade asserted by Plaintiff, there does not appear to be any anti-competitive market effect resulting from GMCR's decision to refuse to allow Plaintiff to sell its K-cup product. Plaintiff's Sherman Act, Section 1 claim must therefore be dismissed for failure to state a claim.[5]

E. Monopolization, Attempted Monopolization, Conspiracy, Sherman Act § 2

Section 2 of the Sherman Act provides that every "person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . ." 15 U.S.C.A. § 2. Plaintiff maintains that all Defendants, collectively, have monopoly power in the relevant market for the internet distribution of K-cups or have attempted to monopolize the internet distribution of K-cups. Plaintiff further contends that if GMCR's acts go unchecked, it may use its unlawful monopoly power to dictate K-cup prices and method of distribution, thereby hurting consumers.

To assert a violation under Section 2 of the Sherman Act, a party must show that an alleged monopolist demonstrates monopoly power, which is the power to control prices or exclude competition from the relevant market. *E.I. du Pont*, 351 U.S. at 391. "Although this is normally a factual inquiry, courts have not hesitated to dismiss antitrust claims where it is clear that the alleged geographic market is too narrow or implausible. " *Acre v. Spindletop Oil & Gas Co.*, 2009 WL

---

[5] Plaintiff in its Response to the instant Motion asserts for the first time: "since the filing of this action, additional facts have come to light, and Plaintiff believes that Defendants are liable to the Plaintiff for violation of Section 1 of the Sherman Act because of the Defendants' illegal tying of the sale of Keurig brewers to the sale of K-cups." (Doc. 51, p. 7). This new tying claim does not appear in the Amended Complaint and therefore will not be considered.

4016116 (E.D. Ark. Nov. 18, 2009).

As stated above, the alleged product market asserted by Plaintiff is invalid due to its narrowness and implausibility, as it consists of GMCR's own patented and trademarked K-cup product and nothing more. GMCR does not have a monopoly on the single-brew business as a whole; indeed the evidence is clear that a number of products other than the K-cup deliver single-brew coffee, and consumers have a wide variety of internet and non-internet sources for single-brew coffee products and supplies.

The Supreme Court case of *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 610-11 (1985), announced that the unilateral termination of a voluntary course of dealing was considered anti-competitive when such refusal to deal "was not motivated by efficiency concerns" and indicated that the alleged monopolist "was willing to sacrifice short-run benefits and consumer goodwill in exchange for a perceived long-run impact on its smaller rival." In *Verizon Communs., Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 409 (2004), the Supreme Court elaborated on its reasoning in *Aspen Skiing* by finding that a refusal to deal can be unlawful only if the monopolist sacrifices profits today in the hope of reaping greater returns from eliminating competition in the future.

In comparing the facts of *Aspen Skiing* with those in the case at bar, GMCR's refusal to deal is plainly not violative of the antitrust laws. There is no indication that GMCR refused to deal with Coffee.org for anti-competitive purposes or to secure untold profits. Furthermore, the Court finds that GMCR is not a monopolist, and therefore, any refusal by GMCR to deal with Coffee.org cannot, by definition, violate any antitrust law. GMCR decided to discontinue its business relationship with Coffee.org because of disagreement over Coffee.org's marketing strategies. *See* Doc. 31, p. 124.

Specifically, GMCR's company representative testified at the April 14, 2011, hearing before the Magistrate that there were three specific reasons why GMCR decided to discontinue the business relationship it had with Coffee.org: 1) there was no contract between it and Coffee.org; 2) Coffee.org could not be a licensed "KAD" or "Keurig Authorized Distributor" by virtue of the fact that Coffee.org had only an online presence, but no brick-and-mortar retail store; and 3) Coffee.org was, according to GMCR, "representing our brands as though they had some ownership in the marking [sic] decisions, so they were creating blog space and website pages without ever discussing with us the use of our trademark." *Id.*

The Eighth Circuit summarized the issue well in *Ryko Manufacturing Co. v. Eden Services*, 823 F.2d 1215, 1234 (8th Cir. 1987), when it observed: " . . . the concern of antitrust law is the protection of competition, not individual competitors." As inconvenienced and indignant as Coffee.org is at GMCR's refusal to authorize it as a licensed Keurig Authorized Distributor, the Court finds that the Complaint fails to state a Sherman Act Section 2 violation for monopolization or attempted monopolization.

## IV. Conclusion

After consideration of Defendants' Motion to Dismiss or for Judgment on the Pleadings (Doc. 44), it appears clear that Plaintiff can prove no set of facts which would entitle it to relief. Accordingly, as there are no material facts to resolve and Defendants are entitled to judgment as a matter of law, the Court enters judgment on the pleadings in favor of Defendants.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or for Judgment on the Pleadings (Doc. 44) is **GRANTED**. Plaintiff's claims against all Defendants are DISMISSED WITH PREJUDICE. In light of the Court's decision to dismiss this case, Defendants' Motion to

Stay Discovery and Continue Trial Date (Doc. 53) is **DENIED AS MOOT**.

IT IS SO ORDERED this 15th day of February, 2012.

/s/ P.K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE